**SIGNED THIS: July 17, 2023**

_____
**Peter W. Henderson
United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

In re:

**Midwest M & D Services, Inc.,**

Debtor.

Case No. 20-81102

## OPINION

The Debtor, Midwest M & D Services, Inc., an Illinois corporation, has moved for a finding that Matthew Porter violated the automatic stay of 11 U.S.C. §362(a)(3) by filing a lawsuit against Douglas and Dawn Hanabarger. Because the complaint asserted a claim that belonged to Mr. Porter, not the Debtor, no violation of the automatic stay occurred. The motion will be denied.

I

The Debtor filed a voluntary bankruptcy petition under Chapter 11, subchapter V, in November 2020. Page 1 of Document 1 in this case disclosed that Douglas B.

Hanabarger and Matthew L. Porter each had a 50% ownership stake in the Debtor. When the Debtor filed its subchapter V plan in February 2021, however, it inserted a curious description of Class 6: "The equity security holder(s), which is anticipated to be only Douglas Hanabarger, will not be impaired by this Plan. The pre-petition equity security holder(s) will continue to own 100% of the reorganized Debtor." The plan, which called for a five-year repayment schedule, was confirmed without objection under 11 U.S.C. §1191(b) in April 2021.

Nearly a year later, Mr. Porter filed a lawsuit against Douglas and Dawn Hanabarger in the Circuit Court for Bureau County, Illinois. In his complaint, entitled "Complaint for Shareholder Remedies under 805 ILCS 5/12.56," he alleged that the Hanabargers controlled the Debtor and had failed to observe the corporate formalities of annual meetings or resolutions to conduct the corporate business, "leaving [him] in the dark." He alleged he had sought corporate records from Mr. Hanabarger without success. The records he had been able to obtain—financial statements provided by the Hanabargers to Sauk Valley Bank, a creditor—convinced him that they were mismanaging the company. Mr. Porter alleged that he feared the company would be unable to comply with the subchapter V plan as a result of the Hanabargers' mismanagement, potentially leaving him on the hook for a personal guarantee.

The complaint contained two counts. Count I alleged, in the language of 805 ILCS 5/12.56(a)(3), that the Hanabargers had acted "in a manner that is illegal, oppressive, or fraudulent with respect to Shareholder in his capacity as a shareholder, director, or officer" in two respects. First, they had failed to maintain corporate records or make them available to Mr. Porter, a shareholder; and second, they had failed to exercise reasonable care to manage and maintain the business of the corporation. To remedy the alleged shareholder oppression, Mr. Porter sought a court order under §12.56(b) requiring the Hanabargers to turn over corporate records to Mr. Porter, enjoining them from obligating the corporation under any contract or agreement or expending the corporation's funds, removing the Hanabargers from their roles with the company, and installing Mr. Porter as the sole officer, director, and registered agent of the Debtor. Mr. Porter also requested the court order a full accounting with respect to any and all matters in dispute. Count II incorporated the above-mentioned allegations in support of a preliminary injunction under 805 ILCS 5/12.60(d) for the same relief requested in Count I.

The Hanabargers quickly removed the suit to the U.S. District Court for the Central District of Illinois (Case No. 4:22-cv-4084-SLD-JEH). The district court referred the case to this Court, where it was docketed as adversary proceeding No. 22-8005. The Court eventually dismissed the lawsuit in October 2022, on the Hanabargers' motion,

due to Mr. Porter's failure to prosecute the action. In doing so, however, the Court revisited the Chapter 11 plan's treatment of the equity security holders in Class 6.

In their efforts to dismiss the adversary proceeding, the Hanabargers argued that the plan had operated to divest Mr. Porter of his ownership interest in the Debtor based on the language describing Class 6 noted above. The Court disagreed:

> The plan does not say that Porter will be divested of his shares upon confirmation. The plain fails to clearly and conspicuously give notice to the affected party, Mr. Porter, that confirmation would result in the loss of his ownership interest in the Debtor. The Court concludes that notice is deficient for Fifth Amendment purposes.

Indeed, the Hanabargers' argument troubled the Court:

> [T]he plan[] fail[s] to provide any rationale or business justification for a divestiture of Mr. Porter's 50% ownership interest and resulting increase in Mr. Hanabarger's ownership interest to 100%, which would, in effect, result in a gift of Mr. Porter's shares to Mr. Hanabarger for no consideration and without a stated justification. The absence of any justification or consideration implies that the proposed equity restructuring was nothing more than an arbitrary attempt to get Mr. Porter out of the picture without having to pay him anything and without having to afford him the rights of a shareholder under the Illinois Business Corporations Act.

The Court thus modified the order confirming the plan to clarify that confirmation of the plan had no effect on the equity interests that existed when the case was filed. Mr. Porter's rights as a shareholder remained unimpaired and were "exercisable in a non-bankruptcy forum, subject to modification of the automatic stay, to the extent applicable."

The Debtor—not the Hanabargers—now argues that the automatic stay was applicable to the exercise of Mr. Porter's shareholder rights, and it seeks sanctions for Mr. Porter's alleged violation of the stay. The matter has been fully briefed on one question, as articulated by the Debtor: "Did the Complaint constitute a derivative cause of action under Illinois law such that it was property of the Bankruptcy Estate and therefore subject to the provisions of §362?" Doc. #236 at 2. The parties also disagree as to whether sanctions are available or appropriate under either 11 U.S.C. §362(k) or §105(a).

## II

By filing a bankruptcy petition, a debtor obtains a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3). Section 362(a)(3) is deliberately broad—encompassing "every effort" to exercise control over property of the estate—in order to concentrate, in a single forum, disputes affecting a debtor's solvency and continuing operations. *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994). Property of the estate includes *all* legal or equitable interests (with some exceptions not relevant here) of the debtor in property, including causes of action. 11 U.S.C. §541(a)(1); *In re Geise*, 992 F.2d 651, 655 (7th Cir. 1993). When a plan is confirmed under §1191(b), as it was here, property of the estate includes all property of the kind specified in §541 that the debtor acquires after the date of commencement of the case but before the case is closed. 11 U.S.C. §1186(a)(1).

Whether a cause of action belongs to the estate depends upon whether under applicable state law the debtor could have raised the claim. *Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). If the cause of action belongs to the estate, then the trustee (or here, the debtor in possession, see 11 U.S.C. §1184) has exclusive standing to assert it, and the automatic stay prevents shareholders from asserting the claim. *BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 771–72 (S.D.N.Y. 2000). The parties thus agree that Mr. Porter acted contrary to the stay of §362(a)(3) if he asserted a cause of action that under Illinois law belonged to the Debtor. (Mr. Porter did not name the Debtor as a defendant, so the Debtor correctly has not argued that the stay of §362(a)(1) was violated. See *In re Richard B. Vance & Co.*, 289 B.R. 692, 696–97 (Bankr. C.D. Ill. 2003) (Perkins, J.)).

### A

It has "long been held that rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties … become property of the estate" that the trustee (or debtor in possession) alone may pursue. *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987). Under Illinois law, a shareholder may step into the shoes of a corporation and bring a derivative action to prosecute the breach of a duty to the corporation by an officer, director, or controlling shareholder. *Lower v. Lanark Mutual Fire Ins. Co.*, 502 N.E.2d 838, 840 (Ill. App. Ct. 1986). By contrast, a shareholder may bring an action on his own behalf against a corporate wrongdoer who has directly injured the shareholder. *Zokoych v. Spalding*, 344 N.E.2d 805, 813 (Ill. App. Ct. 1976). "A suit brought by a stockholder upon a personal claim is by its nature distinguishable from a proceeding to recover damages or

4

other relief for the corporation." *Id*. Recovery in a derivative case inures to the corporation while recovery in a direct case inures to the individual shareholder. *Spillyards v. Abboud*, 662 N.E.2d 1358, 1363 (Ill. App. Ct. 1996). To distinguish between the two types of action, Illinois courts look to the "gravamen" of the pleadings to see whether they state injury to the plaintiff individually or injury that affects the shareholders as a whole. *Zokoych*, 344 N.E.2d at 813.

Under Illinois common law, to have standing to sue individually, a plaintiff must allege a special injury—either an injury that is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation. *Spillyards*, 662 N.E.2d at 1363. The fact that a plaintiff includes a direct claim in his pleadings does not foreclose a finding that he has also stated a derivative claim, though. "The same set of facts may give rise to both an individual and a derivative claim where a shareholder has suffered an injury different from his fellow shareholders." *Staisz v. Resurrection Physicians Provider Group, Inc.*, 209 N.E.3d 361, 367 (Ill. App. Ct. 2022).

### B

The parties have briefed this motion as though Mr. Porter brought an action against the Hanabargers under a common-law theory of breach of fiduciary duty. Their arguments thus focus on whether the gravamen of the complaint states a direct or a derivative claim. But Mr. Porter did not file a complaint alleging that the Hanabargers had violated their common-law fiduciary duties. He filed a complaint under 805 ILCS 5/12.56(a)(3) asserting his own rights against shareholder oppression. He alleged that the Hanabargers had "acted in a manner that is illegal, oppressive, or fraudulent with respect to Shareholder." That claim belonged to him alone, not the corporation. 805 ILCS 5/12.56(a)(3) ("In an action *by a shareholder* … the Circuit Court may order one or more of the remedies listed in subsection (b) ….") (emphasis added).

Section 12.56 was added to the Illinois Business Corporation Act in 1995. Before then, the only remedy available under Illinois law for shareholder oppression was dissolution of the corporation. *Schirmer v. Bear*, 672 N.E.2d 1171, 1176 (Ill. 1996). Now, a shareholder may seek a number of remedies upon proof that the defendant engaged in "illegal, oppressive, or fraudulent conduct." *Id.*; 805 ILCS 5/12.56(b)(1)–(12). The Court is aware of no authority that permits a corporation to assert the rights given to shareholders under §12.56(a), even if the remedies under §12.56(b) would inure to its benefit. Section 12.56 "gives an individual shareholder a right to individual relief for

harm done by a corporation." *Ayers v. Ayers*, No. 11-2208, 2012 WL 1029468, at *2 (C.D. Ill. 2012) (Bernthal, M.J.).

A plaintiff may bring an individual suit under §12.56 even if he does not have standing to bring a derivative suit. That contrast is illustrated well in *Toscano v. Koopman*, where the plaintiff pleaded two relevant counts in his complaint: (1) a claim for relief as a minority shareholder under §12.56, and (2) a claim for relief based on fellow shareholders' breach of their fiduciary duties. 148 F. Supp. 3d 679, 687–88 (N.D. Ill. 2015). Neither count alleged that the plaintiff had suffered a separate injury distinct from a generalized injury suffered by all shareholders. *Id*. The court held that the plaintiff did have standing to pursue §12.56 relief, because that statute permits individual shareholder claims. *Id*. By contrast, the plaintiff did not have standing to assert a breach of fiduciary duties, because an individual shareholder cannot maintain a direct action for breach of those duties without alleging a distinct injury. *Id*. at 688. Illinois courts would likely agree with the *Toscano* analysis. See, e.g., *Bone v. Coyle Mechanical Supply, Inc.*, 2017 IL App (5th) 150117-U, at *10 (Ill. App. Ct. 2017) (unpublished) ("Under Illinois common law, a shareholder seeking relief for an injury to the corporation … must bring his suit derivatively on behalf of the corporation. … However, no such requirement exists with regard to a cause of action brought pursuant to [§12.56], which clearly gives a shareholder standing to proceed directly.").

Indeed, the primary case the Debtor relies upon, *Staisz*, analyzes the two types of claims differently for purposes of standing. The plaintiff in *Staisz* lacked individual standing to bring a breach of fiduciary duty claim because the claim was derivative. 209 N.E.3d at 367–68. She lacked standing to bring a §12.56 claim not because the claim was derivative but because she was not a shareholder. *Id*. at 366. The appellate court emphasized that §12.56 repeatedly refers to the individual shareholder: the statute's "clear language" "provides the remedies available to 'the petitioning shareholder' in 'an action by a shareholder.'" *Id*. *Staisz* makes clear that only a shareholder may bring suit under §12.56, and its different treatment of the two claims for standing purposes implies that the direct-or-derivative analysis is inapposite when it comes to §12.56.

Apart from asserting that Mr. Porter's claim was derivative, the Debtor also relies upon language from *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 799 (Bankr. S.D. Tex. 1993), to argue that Mr. Porter violated the stay by seeking to "interfere with the operations of the Debtor in performing under the plan." *Schepps Food Stores* was not an automatic-stay case, though. Shareholders there waited until the Chapter 11 plan was confirmed before filing a derivative suit against the debtor corporation. *Id*. at 795. Because property of the estate vests in the debtor upon confirmation of a traditional Chapter 11 plan, 11 U.S.C. §1141(b), the automatic stay terminates at confirmation, 11

6

U.S.C. §362(c)(1). The derivative suit thus did not violate the automatic stay; instead, it was premature because the shareholders had not first made a proper demand for action to the corporation before instituting the action. *Schepps Food Stores*, 160 B.R. at 799. More importantly, the court held, the derivative suit filed hours after confirmation of the plan was an improper attempt to interfere with the court's confirmation order, which the shareholders had not appealed. *Id*. The court thus exercised its equitable powers to enjoin the lawsuit from proceeding.

C

Mr. Porter relied exclusively on §12.56 as the basis for his complaint of shareholder oppression against the Hanabargers. That cause of action belonged to him, not the corporation, so he did not violate the automatic stay of §362(a)(3) by exercising control over a cause of action that was property of the estate. Further, even assuming for the sake of argument that the suit posed the potential to interfere with the confirmed plan, the Debtor has not sought sanctions for anything other than a violation of the automatic stay. It would be inappropriate to award sanctions under a legal theory different from that advanced by the movant. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

Because Mr. Porter did not violate the automatic stay, it is unnecessary to address potential sanctions, which would be available to the Debtor, a corporation, only under 11 U.S.C. §105(a). See *In re Fashions USA Inc.*, 301 B.R. 528, 530 (Bankr. C.D. Ill. 2003) (Fines, J.) (finding corporation not "individual" under §362(k)). It suffices to say that sanctions under §105(a) are a "severe remedy," *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019), and the Hanabargers' attempt to strip Mr. Porter of his equity interest without due process would counsel against forcing him to bear their litigation costs.[1]

That is not to say that the Court endorses Mr. Porter's decision to forgo seeking this Court's permission to proceed in his lawsuit. "[A]ll this trouble might have been avoided had [Mr. Porter] simply moved for relief from the automatic stay" in March 2022. *Richard B. Vance & Co.*, 289 B.R. at 698. The Court takes seriously the Seventh Circuit's view that disputes concerning a bankrupt entity ought to be aggregated first in the bankruptcy forum. *Havlik*, 20 F.3d at 708–09. That is particularly so under subchapter V, in which the automatic stay persists when a non-consensual plan,

---

[1] The Debtor has requested damages for "[b]oth the Debtor and Hanabargers" even though it lacks standing to assert the Hanabargers' alleged injuries. Doc. #244 at 5; cf. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party[.]").

§1191(b), is confirmed. 11 U.S.C. §1186(a). Shareholders skate on thin ice in bypassing the bankruptcy court when a §1191(b) plan has been confirmed; that Mr. Porter did not fall through does not make his choice an advisable one.

The motion to find Mr. Porter in violation of the automatic stay is denied. This opinion serves as the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052. A separate order shall be entered.

# # #